### RHOADES v. BOHN.

#### No. 26237.

Circuit Court, Duval County.

November 6, 1958.

J. Donald Bruce, Jacksonville, and Geffs, Geffs, Block & Geffs, Janesville, Wis., for petitioner.

J. Edwin Gay of Rogers, Towers, Bailey & Jones, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

This is a proceeding upon an application for writ of habeas corpus brought by plaintiff (defendant's former wife) against defendant, for the purpose of enforcing a second amended decree of the circuit court of the state of Wisconsin, by which the custody of Patricia K. Bohn is ordered changed from the defendant to the plaintiff. Plaintiff is a citizen and resident of the state of Wisconsin, and defendant is a citizen and resident of the state of Florida, who was formerly a citizen and resident of the state of Wisconsin and who has custody of said minor under the first amendment to the Wisconsin decree.

The matter was set down for final hearing before this court at which time defendant filed his answer and testimony was taken. Following the close of testimony for plaintiff and defendant, the

court took the cause under advisement and the parties filed extensive briefs and reply briefs. The court has now considered the application for writ of habeas corpus and the exhibits attached thereto, defendant's answer, the testimony and evidence produced before the court, a copy of the transcript of the proceedings in the circuit court of Rock County, at Janesville, Wisconsin, on December 17, 1957, which was furnished at the court's request by counsel for plaintiff and filed herein as the court's exhibit no. 1, and the briefs and authorities furnished by counsel.

Since this is a proceeding to enforce a decree of a Wisconsin court changing the custody of Patricia Kay Bohn, the minor child of plaintiff and defendant, it would be well to detail some aspects of the life history of said minor. She was born August 12, 1947; when she was four years old her mother (plaintiff herein) instituted a suit for divorce against her father (defendant herein) by the filing of a complaint on October 11, 1951, to which her father filed an answer the same day; on that day also a stipulation was entered into between the parties, by which the parties agreed plaintiff would be awarded the care and custody of Patricia with certain visitation rights given defendant; from that point on, the divorce action apparently proceeded ex parte and no real contest was made on the merits of the complaint or the custody and welfare of Patricia. Judgment of divorce was entered in favor of plaintiff November 8, 1951, in the circuit court of Rock County, Wisconsin. Apparently, Patricia lived with her mother or maternal grandparents until on or about September 16, 1953, at which time again without a real contest or hearing on the merits touching the welfare and best interest of Patricia, the care, custody and control of the then six-year-old girl was given to her father by stipulation approved by order of court amending the judgment of divorce "until further order of the court." Certain visitation rights were given plaintiff and her parents at the parents' home under this amendment, and were enjoyed to a limited degree until February, 1954, after which date, in April of 1954, the defendant-father, who prior to that time had been a citizen and resident of Wisconsin, brought Patricia (then 6½ years old) to Jacksonville Beach, Florida, where he established a bona fide residence and still remains— this move was without the prior knowledge or consent of plaintiff and without leave of court, if any such leave was required, but plaintiff did learn of the move from an article in the social column of the "Janesville Gazette" appearing April 5, 1954, to the effect that Mr. and Mrs. David E. Bohn (he had remarried April 24, 1953) and Patricia were "making their residence in Jacksonville, Florida".

The proceedings to obtain the amended decree herein sought to be enforced began December 2, 1957, by the filing by plaintiff in the original Wisconsin divorce action of an application and notice that she would on December 13, 1957 apply to that court for a further amendment of the judgment of divorce as amended September 16, 1953 to change the custody of Patricia from defendant to plaintiff. Defendant was furnished notice and a copy of the application by regular mail, but neither he nor said minor child left Florida. Defendant did make a special appearance through counsel and challenged the jurisdiction of the Wisconsin court on the grounds that both he and Patricia were then, and had been since April of 1954, domiciled in Jacksonville Beach, Florida, and upon the grounds of improper and insufficient service. Both contentions were denied by the Wisconsin court, whereupon counsel who appeared specially withdrew from the courtroom and did not participate in the hearing on the merits of plaintiff's application which began immediately and proceeded ex parte.

At this hearing to determine the future custody of Patricia and at which the issue was or should have been "the welfare and best interest of the child", the only scintilla of evidence that gave any clue as to the present status of Patricia, then ten years old, was a letter dated July 10, 1954, written by defendant four months after Patricia's arrival in Florida, three years and five months earlier when Patricia was still seven years of age. On that letter, and testimony of persons who had not seen defendant or Patricia for nearly four years, and who had no knowledge of the present general welfare, health or home environment of Patricia or the opportunities open to her of a social, educational, religious and cultural nature, the court concluded that it had jurisdiction of the subject matter and the parties, that defendant is unfit to have the care and custody of the child, and that plaintiff is a fit and proper person to have her care, custody and control, and "that the welfare and interest of the minor child will be promoted by transferring the custody from the defendant to the plaintiff", and thereupon amended the amended judgment of divorce accordingly on December 13, 1957. Now, this court is asked to enforce that amended decree by according it full faith and credit.

It is admitted that there has been no change of conditions or circumstances affecting Patricia since the date of the amended decree, and plaintiff contends that such decree must be accorded full faith and credit under the decisions of the Supreme Court of Florida, citing Weldgen v. Weldgen, 62 So. 2d 420, and others, further contending that defendant was properly served and that the Wisconsin court had "continuing jurisdiction."

The question whether or not there has been a change in the conditions affecting Patricia since the so-called "hearing" of December 13, 1957, is not the controlling question, where, as here, the conditions affecting the child were not in truth or in fact inquired into on December 13, 1957, or at any time prior thereto, but her custody was determined by the "bargaining" of the parties and acquiesced in by the Wisconsin court after ex parte hearings where no real contest was ever made. It would be little less than a judicial whitewash of predetermined conclusions of law wholly unsupported by any evidence to hold that the mere recitals that "defendant is unfit" and "plaintiff is a fit and proper person" to have the custody of a ten-year-old American girl and that the "welfare of the child" requires that a custody arrangement made or acquiesced in by the parties themselves for more than three years should be changed without any evidence of how the child has been and is reacting to that environment, what her present condition of health, education, social adjustment and behavior is, and what has been and is being done for her welfare by those who now have and have had this responsibility during vital formative years from age seven through ten.

Florida will recognize and enforce a custody decree of a sister state although the minor children were neither domiciled nor physically present in the sister state at the time of the decree, if the parent against whom the foreign decree is sought to be enforced actually appeared, engaged counsel and litigated the question of the best interest of the children in the custody proceedings in the sister state. Lambertson v. Williams, 61 So. 2d 478.

If, however, the question of the best interest of the children was not litigated in a truly adversary manner in the custody proceedings in the sister state in which the children were neither domiciled nor physically present, Florida will not recognize such foreign decree as binding even though the party against whom the foreign decree is sought to be enforced was personally served and appeared in the custody proceedings in the sister state. Gilman v. Morgan, 158 Fla. 605, 29 So. 2d 372, cert. den. 331 U. S. 796.

Under the circumstances of the case at bar, we do not need to decide the question of the sufficiency of the notice given defendant because it is clearly apparent that in the Wisconsin court the question of the best interest of Patricia was not litigated in a truly adversary manner and the testimony and evidence adduced dealt almost solely with conditions and circumstances prior to the amended decree giving defendant the custody of Patricia September 16, 1953.

But even if this were not the law controlling this case, the Florida courts can ascertain whether or not the Wisconsin court had jurisdiction of the subject matter, in the absence of Patricia from that state. Williams, et al v. State of North Carolina, 325 U. S. 226. On this point, we are dealing with more than the question of whether or not defendant's action in removing Patricia from Wisconsin to Florida violated the "spirit and intent" of the stipulation and amended judgment made in conformity therewith (certainly no express direction was violated) and more than the question of whether the recital of "until further order of this court" or the laws of Wisconsin give that court "continuing jurisdiction" where, as here, the exercise of any jurisdiction by that court has been so long delayed and the purported exercise thereof so obviously void due to the absence (and want of knowledge) of the subject matter. The real question is—Assuming the Wisconsin court had jurisdiction of the parties and the subject matter in the original proceedings (which it did) and one of the parties moved to a sister state even in violation of an express injunction of the court (which was not the case here), how long can that jurisdiction be retained in the Wisconsin court where the fact of removal has not been concealed and the violation of the injunction (if any) has been well known from the date of removal? Or, to state it differently, at what point can the court of a state where the person having custody and the child, who is the subject matter, reside begin to exercise its responsibility for and obligation to a minor residing within its borders?

No doubt, there are cases where this line of demarcation is difficult to discern but this court takes the view that in this case the time has long past when it is required, under the doctrine of comity or the constitutional mandate of full faith and credit, to accord validity to the amended judgment of the Wisconsin court and enforce the same here under the circumstances of this case. It may be that the time has come for a conscientious, thorough and enlightened investigation into the welfare of Patricia by a court of competent jurisdiction, if there is doubt in the minds of those who have her best interest at heart. This opinion does not foreclose that possibility, but if there is such doubt, it should not be resolved by probing into the old wounds of marital battles or on testimony as to conditions and circumstances known to exist at the time when custody was changed in 1953. Any such doubt should be resolved by developing the latest knowledge of the current situation, which should be the polar star in any proceeding to change the status quo of a minor child.

Although the language of Mr. Justice Frankfurter in his dissenting opinion in Kovacs v. Brewer, 2 L. ed. 2d 1008, does not represent the law of that case, which presented a very similar factual situation to the one in the case at bar and in which the majority opinion of the Supreme Court of the United States declined to decide the controlling constitutional question, his well-chosen words aptly express the views of this court on the problem at hand—

"This case vividly illustrates the evil of requiring one court, which may be peculiarly well-situated for making the delicate determination of what is in the child's best interests, to defer to a prior foreign decree, which may well be the result of a superficial or abstract judgment on what the child's welfare requires. In this case, the New York decree was rendered in a proceeding at which the child was not present—indeed, was not even within the State—by a judge who, so far as the record shows, had never seen her. Whatever force such a decree might have in New York, the Federal Constitution at all events does not require its blind acceptance elsewhere. The minimum nexus between court and child that must exist before the court's award of the child's custody should carry any authority is that the court should have been in a position adequately to inform itself regarding the needs and desires of the child, of what is in the child's best interests. And the very least that should be expected in order that the investigation be responsibly thorough and enlightening is that the child be physically within the jurisdiction of the court and so available as a source for arriving at Solomon's judgment. * * *"

The final disposition of the Kovacs case might require a different result from that reached by this court in the case at bar, but until that day, this court must follow the Florida decisions which hold that a proceeding for the determination of the custody of a minor is in the nature of an action in rem and the presence of the minor is a necessary requirement and courts of the state in which minor children are domiciled have jurisdiction to determine custody, whereas courts of a state in which minor children are neither domiciled nor physically present do not have jurisdiction of the subject matter to determine the right of custody. Dorman v. Friendly, 146 Fla. 732, 1 So. 2d 734, and Galen v. Kuhl (Fla. DCA3), 103 So. 2d 225. Florida is also committed to the doctrine that the courts of this state have jurisdiction to determine the right of custody of children temporarily residing in the state of Florida, even though the children's domicile be in another state. Di Giorgio v. Di Giorgio, 153 Fla. 24, 13 So. 2d 596; Eddy v. Staufer, 160 Fla. 944, 37 So. 2d 417. Accordingly, this court holds that the Wisconsin

decree herein sought to be enforced is not entitled to full faith and credit under the federal constitution or the laws of Florida for want of jurisdiction over the subject matter because of the absence of Patricia from that state prior to and at the time of the December 13, 1957 hearing, pursuant to which said decree was entered.

It is ordered and adjudged that the application for a writ of habeas corpus is denied, and the writ of habeas corpus served upon the defendant is discharged, and Patricia K. Bohn is remanded to the custody of her father, David E. Bohn, defendant herein, who shall be entitled to recover his costs herein from the plaintiff, taxed in the amount of $[none], for which let execution issue.