292 So.2d 47 (1974)
Mary Ann TAYLOR, Formerly Mary Ann Schilt, Appellant,
v.
Clarence H. SCHILT, Appellee.
No. 72-617.
District Court of Appeal of Florida, Second District.
March 1, 1974.
*48 Sheppard, Majewski & Johnson, Fort Myers, for appellant.
Richard J. Brodeur, Fort Myers, and Farr, Farr, Haymans, Moseley & Odom, Punta Gorda, for appellee.
MANN, Chief Judge.
We consider this case and Gregory v. Gregory, Fla.App., 292 So.2d 50 together because both involve the important question of the weight to be given the preferences of children in custody litigation. In both cases we reverse conscientious trial judges. The records indicate, in Gregory, an overemphasis on the preference of a child whose testimony may be tainted by evidence that the prevailing parent may have bought the child's allegiance and, in this case, that the children, despite the father's lavish supply of material things, prefer a mother's home because they find love there.
The Schilts were divorced in 1965. She was, at the time, unemployed and unable to care for the children. They stipulated that the father was to have custody and visiting arrangements were agreed to. She moved to Tennessee, found a job and remarried. Almost every other week since the divorce she has driven from Tennessee to Florida to visit the children. They spend vacations with their mother and stepfather, Mr. Taylor, in a home too small but soon to be replaced by a larger one on an ample site. The important thing about their testimony is its consistency: the mother's home is full of love, the father's is full of fear.
*49 The father is a practicing psychiatrist. He has a large home and plans many activities for the children. Some he plans for week-ends Mrs. Taylor is visiting, and gets upset when the children prefer to spend the time with their mother rather than with a group of youngsters from their church. Once, just before the visitor from the welfare department came to make her inspection preparatory to advising the trial judge, Schilt hired a maid to clean the house. It is clear that at all other times housekeeping is less than adequate. He has a temper. He has been determined, on adequate evidence, to be a fit parent. His son by a prior marriage and all of these children, who range in age from 11 to 15, testify consistently to an authoritarian attitude, quick temper and an atmosphere of fear in the home.
There is some evidence which the trial judge may have relied on which we should discuss. In the first place, the Florida welfare counselor recommended that the custody remain with the father. We find no basis on which this employee of the state could make a comparative judgment. The report she received from Tennessee was favorable to Mrs. Taylor, and the counselor has no knowledge of circumstances there. The home which she described as clean and neat was made so especially for her coming. The father is a good disciplinarian, in the view of teachers and the principal of the school operated by the church of which the family is a member. The appellee asserts that custody cannot be changed without a finding of unfitness on the father's part, citing Ritsi v. Ritsi, Fla.App.3d 1964, 160 So.2d 159. That case does not so hold. We have held to the contrary in Jayne v. Dennison, Fla. App.2d 1973, 284 So.2d 237. The rule is that in custody situations "changed circumstances" is the threshold requirement. The reason is that res judicata does not fit custody matters, yet some barrier must be raised against too frequent petitions for modification. The cases uniformly hold that the children's welfare is paramount, and a change in custody may be considered after a showing of changed circumstances sufficient to warrant reconsideration, a change amply demonstrated here by undisputed proof. It does not make sense to require the humiliation of one parent by determining him to be "unfit" before the mandate of our Supreme Court to consider the child first may be respected. This father has many good qualities. He has been found to be a fit parent and we do not disturb that finding. We do hold that children old enough to have a well considered judgment, who unanimously want to live with their mother, in whose home they find love and good care, should be placed with their mother. This is so not because she has preference: the statute has changed that. Fla. Stat. § 61.13(2), F.S.A. (1971). It is so because, considering the two individuals and all of the indisputable evidence in the case she is to be preferred in fact, though equal in law.
There is troublesome evidence that the mother might have made too much of an incident which happened when a daughter of the father's first marriage was nine years old. This involves an allegation of fondling which rests on ambiguous evidence resolved in the father's favor. The evidence that the mother may have gone beyond the bounds of propriety in discussing this matter with her daughter prompts us to remark that neither parent should deliberately undermine the child's love for the other with that purpose consciously in mind. We credit the mother's expression of good motive, and the trial judge's resolution of this question in the father's favor. But it is more than overcome by clear evidence that he has done worse. He withholds letters from the mother to the children. He insisted that they call her "Mrs. Taylor." He takes them on trips to exotic places. And, to top it off, he promised them new scuba diving gear if he won this custody fight. The record shows clearly that he has, at times subtly, used both intimidation and improper inducement *50 to gain their loyalty, and they are bright enough and mature enough to see through it.
In Eddy v. Staufer, Fla. 1948, 37 So.2d 417, at 418, Mr. Justice Hobson said: "Although the minor's preference is never controlling, the desire of a strapping six-foot boy of high school age should be given great weight... . It is our opinion that the passage of time has wrought such a change of conditions as to justify the application of the almost universal rule that the Court where the minor is found may make an interlocutory order when intervention is necessary for the welfare of the child. This child is passing through a crucial period. His immediate welfare is at stake. Indeed, the course of his life may be affected adversely by a refusal of the Florida Courts to consider his unquestioned preference. He has reached an age when, unperturbed, he should have and exercise reasonable discretion." See also Fielding v. Highsmith, 1943, 152 Fla. 837, 13 So.2d 208; State ex rel. Cline v. Cline, 1926, 91 Fla. 300, 107 So. 446; Marshall v. Reams, 1893, 32 Fla. 499, 14 So. 95; Goldstein v. Goldstein, Fla.App.3d 1972, 264 So.2d 49.
The record before us demonstrates that the mother has shown, over a period of years, that whatever conditions made it initially advisable to allow custody in the father, there is no doubt that at the present time custody should be granted to the mother, with appropriate provision for support and visitation. This is not now a case like Epperson v. Epperson, Fla. 1958, 101 So.2d 367; Longstreth v. Frischkorn, Fla. App.3d 1965, 171 So.2d 550; Bernstein v. Bernstein, Fla.App.2d 1969, 220 So.2d 429; or Lindgren v. Lindgren, Fla.App.2d 1969, 220 So.2d 440. In all of those cases factors fresh at the time of divorce militated against changing custody, but the courts in each case had in mind that the petitioner might gain custody by his or her own efforts to provide a proper home. This mother has demonstrated her entitlement to custody, supported by the preference of children now old enough to make an intelligent choice. It is not like Gregory v. Gregory, supra, 292 So.2d p. 50, in which the child's choice is tainted by improper inducement on the parent's part.
Reversed and remanded for further proceedings consistent with this opinion.
BOARDMAN, J., and SCHWARTZ, ALAN R., Associate Judge, concur.